96    175
114    108

96    175
126    709
96    175
s55NW    687
132    4384

96    175
f143    3307

96    175
152    4551

96    175
f155    1283
155    613

MATTHEW LAMONT v. FRANK LEFEVRE AND ALMINA LEFEVRE, IMPLEADED WITH MICHAEL DAILY.

*Contract of sale—Payment—Mechanic's lien—Notice—Homestead.*

1. A contract for the purchase of building material, which specifies no time for the payment of the purchase price, will be construed as contemplating payment on delivery.

2. Notice of the filing of a statement of lien, under the mechanic's lien law of 1885, need not be served upon the owner of the premises, where the contract out of which the claim arises was made with him; citing *Kirkwood v. Hoxie*, 95 Mich. 62.

3. A homestead exemption may be claimed in land purchased for a homestead, and upon which a building is afterwards erected, and occupied by the owner for hotel purposes, and in which his family reside, they having no other residence or home; citing *Mills v. Hobbs*, 76 Mich. 122; *King v. Welborn*, 83 Id. 195.

4. A lien attaches under the mechanic's lien law of 1885 to a homestead exceeding in value $1,500, subject to the statutory exemption; and, if the premises are incapable of division, they may be sold, as the only means of reaching the excess.

Appeal from Bay. (Cobb, J.) Argued April 7, 1893. Decided June 23, 1893.

Bill to enforce a mechanic's lien. Defendants appeal. Affirmed. The facts are stated in the opinion.

*Hatch & Cooley*, for complainant.

*McDonell & Hall*, for defendants.

HOOKER, C. J. Complainant, a material-man, filed the bill in this cause against Frank Le Fevre and Almina Le Fevre, husband and wife, and Michael Daily, to enforce a mechanic's lien for materials furnished for a hotel erected upon premises owned by Frank Le Fevre.

A contract to furnish material, erect and complete said

hotel, was let by Le Fevre to a firm of builders named
Willis & Grant, who in turn sublet a portion to one Thomp-
son.   Thompson failed to perform, and negotiations were
had whereby complainant furnished material which Thomp-
son should have furnished.   The principal dispute, so far
as the facts are concerned, is over the question of defend-
ant Frank Le Fevre's liability to complainant for this
material, the complainant asserting that it was furnished
upon the request of Le Fevre, accompanied by a promise
to pay for the same the amount of complainant's bid.   The
defendants deny that Le Fevre promised to pay for the
material, and allege further that, if he did, the promise,
being oral, would come within the statute of frauds as a
promise to pay the debt of Willis & Grant, who were under
contract obligations with Frank Le Fevre to furnish the
material.

Upon the question of fact it is sufficient to say that we
agree with the circuit judge that the complainant estab-
lished the contract alleged, and that it was an original
promise, and valid.   It was not within the statute, for
complainant did not sell to Willis & Grant, nor did they
purchase the material from him.

A number of legal questions arise.   It is contended that
there was no meeting of minds, because no time appears
to have been specified when the amount agreed upon for
the material should be paid; but the rule of construction
in such cases is that payment upon delivery is contemplated.

The statement filed with the register of deeds was to
the effect that the materials were furnished " in pursuance
of *a certain contract* with Frank Le Fevre," and that there
was $220 due; and a copy of this statement, with notice
of filing, was served on Frank Le Fevre only.   The bill
alleges two contracts,—one made on or about July 26,
1890, for $400; and another, that complainant should
furnish for the building such materials as Le Fevre might

order from time to time, for which he (Le Fevre) would pay, and under which arrangement complainant furnished materials to the amount of $20. This sum of $20 was rejected by the circuit judge, and, as complainant did not appeal, cannot be allowed here. It is mentioned because the defendants assert that it is the occasion of a variance between the statement, which mentions one contract, and the bill and proofs, which mention two; and it is contended, further, that the statement is excessive by this amount, and that the lien is therefore lost. It appears that the only reason for denying complainant any portion of his claim was the fact that in his statement of lien he did not say two certain contracts instead of one. By a mere technicality he is deprived of his security for $20, although an honest claim. The case differs from those cited by counsel for defendants, where persons wrongfully clouding debtors' titles with excessive liens are denied the benefit of the statute. The case of *Gibbs v. Hanchette*, 90 Mich. 657, carefully distinguishes between such cases and those where, through an honest mistake, too much has been claimed in the statement of lien, or by reason of a failure of proof the claimant was denied the entire amount claimed. We think this case is of the latter description. Under his pleading the court below declined to consider the $20 item, and for reasons given we cannot allow him the amount here, if we should find the statement filed would permit it, about which we deem it unnecessary to express an opinion.

A point is made over the matter of notice, defendant Almine Le Fevre not having been served with notice. The object of a notice is to prevent the owner from paying the principal contractor (Act No. 216, Laws of 1885, p. 295, § 3), and in this case, as the contract was made with the owner, there was no necessity for a notice. The

96 Mich.—12.

validity of a lien does not depend upon the notice. *Kirkwood v. Hoxie,* 95 Mich. 62.

The building for which this material was furnished was a hotel, with a wing; the latter, used for a barber shop, being entirely on the west half of lot 11, while the former was on the west half of lot 12, of block 19, in Bay City. The proof shows that the timber was used in both, which were being erected together, and it is not an unreasonable assumption that both were contemplated when the contract was made. We think they should be treated as one parcel, as defendants evidently treated them, and that the lien attached to both.

The remaining question pertains to the homestead rights of Mrs. Le Fevre. The defendants purchased the premises for a homestead before contracting, and moved upon them before the statement of lien was filed, with the design of making the same their home. They thereby made it a homestead, and the fact that the building erected and in which they reside is a hotel made no difference. *Mills v. Hobbs,* 76 Mich. 122; *King v. Welborn,* 83 Id. 195. To the amount of $1,500 it was exempt from this lien. Beyond that sum the lien attaches, and, as the premises cannot be divided, a sale affords the only means of reaching the excess. To hold that it could not be reached because indivisible would be to do violence to the plain intent of the statute, which, while it aims to afford every one a shelter, was not designed to enable one to defeat his creditors by so constructing valuable property as to make it difficult to divide it.

The decree of the circuit court will be affirmed, with costs.

The other Justices concurred.