ANDREW C. SISMAN CO. v. MILLER.

MECHANICS' LIENS—EVIDENCE—SUFFICIENCY.

> On appeal from a decree in favor of plaintiff, in a suit to enforce a mechanic's lien, where the testimony is conflicting and irreconcilable, and a perusal of the record leads to the conclusion that the circuit judge, who had the advantage of hearing and seeing the witnesses, reached the right result, the decree of the court below will be affirmed.

Appeal from Wayne; Collingwood (Charles B.), J., presiding. Submitted April 7, 1921. (Docket No. 40.) Decided October 3, 1921. Rehearing denied February 8, 1922.

Bill by Andrew C. Sisman Company against William H. Miller and others to enforce a mechanic's lien. From a decree for plaintiff, defendant Miller appeals. Affirmed.

*Percy W. Grose,* for plaintiff.

*Denby, Kennedy & O'Brien,* for appellant.

STONE, J.   This case is here upon the appeal of the defendant William H. Miller from a decree for plaintiff for $2,100.25.   The sworn bill of complaint was filed July 18, 1917, to enforce a mechanic's lien against the leasehold interest of defendant Miller in the premises described in the bill of complaint.   The lien claim arises under the following circumstances: The defendant Harriet E. Whitbeck is the owner, and defendant Miller has a leasehold interest in said premises, which interest commenced May 1, 1911, and expires May 1, 1931.   The premises are generally

known and described as the "Miller building," Detroit, Michigan. Plaintiff, a Michigan corporation, was for some years engaged in the general contracting and building business in Detroit, first under the name of Schmied-Sisman Company, and later under the name of Andrew C. Sisman Company. At the time the work commenced, for which a lien is claimed, plaintiff was operating under the name of Schmied-Sisman Company, and thereafter, and before the filing of the bill, its name was changed.

Owing to the irreconcilable conflict in the testimony, it is difficult to state more than the claim of the parties as to the facts in the case. It is the claim of the plaintiff, supported by testimony, that one Harry L. Hulburt, during the year 1916, and for years prior thereto, was employed as an outside superintendent for the plaintiff; and one George D. Hulburt, his brother, was, at or about the same time, an architect in Detroit, having had an office at one time in the Miller building. Prior to, and in 1916, defendant Miller had employed George D. Hulburt as an architect. In June, 1916, George D. Hulburt, as architect for defendant Miller, ordered certain labor and materials from the plaintiff for the repair of the Miller building, and such labor and materials were furnished by the plaintiff, under the supervision of George D. Hulburt, prior to July 6, 1916.

On July 6, 1916, a fire occurred in the said Miller building, resulting in considerable damage thereto. The plaintiff at that time was engaged in making a specialty of fire losses, appraising the loss and repairing damages. Harry L. Hulburt, plaintiff's superintendent, was told by George D. Hulburt that defendant Miller wanted to see him, and accordingly Harry L. Hulburt met defendant Miller and was requested by the latter to act as an appraiser for defendant Miller, in determining the amount of the fire loss.

And Harry L. Hulburt was asked by defendant Miller how much the plaintiff would charge for the services of Harry L. Hulburt in making an appraisal of the loss. He advised defendant Miller that plaintiff generally charged $50 to $100 to make an appraisal, but that in the event that the work of repairing the building was done by the plaintiff, it would make no charge for his services as an appraiser. Following this, at the direction of defendant Miller, Harry L. Hulburt acted as an appraiser on behalf of defendant Miller without charge, and with the appraiser appointed on behalf of the insurance company, determined the amount which the insurance company should pay to Miller under the policies, which was $3,936.52. Soon after, defendant Miller requested plaintiff, through Harry L. Hulburt, to take a contract to repair the loss, for the same amount as was allowed by the appraisers, but Miller was then informed that, because parties in making repairs often wanted extra things done, plaintiff would not take a contract on a fire loss at a definite amount, but that plaintiff would take the job on a time and material basis, plus ten and ten. Defendant Miller, in reply, told Harry L. Hulburt that he would like to have the plaintiff do the work, and also said that he, Miller, would have George D. Hulburt prepare certain drawings for partitions and changes, and later plaintiff was furnished with such drawings, and George D. Hulburt advised Harry L. Hulburt that Miller had instructed him to let plaintiff have the work. It may be well to say here that defendant Miller denies this claimed arrangement. He claims that he said to Harry L. Hulburt that he, Miller, had made up his mind to have the plaintiff do the work, and gave as a reason that, while he did not know the firm, he knew them as large contractors, but that Harry L. Hulburt

said to him, that the plaintiff was pretty busy, that it was their busy time, and they were short of workmen and foremen, and that he, Miller, should give the contract to George D. Hulburt, and plaintiff would assist George D. Hulburt with workmen and materials, thereby giving George D. Hulburt an opportunity "to get on his feet."

It appears in evidence that the appraisal was completed July 7th, and on the same day George D. Hulburt wrote a letter to the plaintiff, and sent a copy of the same to defendant Miller:

"Phones: Maine 4123,
          Res. East 1132-M.
                GEORGE D. HULBURT,
              Architect and Engineer,
          320 Broadway Market Bldg.,
              Detroit, Michigan.
"Schmied-Sisman Co.,                July 7, 1916.
    285 Beaufait, Detroit, Michigan,
    "*Gentlemen:* You will please proceed to furnish all labor and material required to make the necessary repairs and alterations, etc., required in a six-story brick building located on the corner of State and Shelby streets, and held under lease by Wm. H. Miller, all to be done on a time and material basis. All materials to be charged net plus ten and ten; all labor to be charged net at your scheduled rate; all bills to be rendered to this office semi-monthly. You will instruct your foreman to keep for the benefit of this office time cards which I will furnish. These cards to be delivered to me weekly.
                    "Very truly yours,
                        "GEO. D. HULBURT.
    "Note to the owner:
    "If the above does not meet with your approval kindly notify this office at once.
    "G. D. H. *G."

Following the receipt of this letter the plaintiff wrote a letter to William H. Miller as follows:

"Louis C. Schmied,               Andrew S. Sisman,
          President.                     Vice-Pres.-Treas.
          SCHMIED-SISMAN COMPANY,
                    BUILDERS.
          387-401  Beaufait  Avenue
Lumber, Lath,                        Phone East 2916.
Interior Wood
Trim, General
Factory Work.
                              "Detroit, Mich., July 12, 1916.
"WM. H. MILLER,
     "Cor. State & Shelby Sts.,
     "Detroit, Mich.
     *"Dear Sir:*—We are in receipt of the following
order from Mr. Geo. D. Hulburt, your architect, and
are pleased to accept the same:

" 'You will please proceed to furnish all labor and material
required to make the necessary repairs and alterations, etc.,
required in a six-story brick building located on the corner of
State and Shelby streets, and held under lease by Wm. H.
Miller, all to be done on a time and material basis.  All
material is to be charged net plus ten and ten; all labor to
be charged net at your scheduled rate; all bills to be rendered
to this office semi-monthly.  You will instruct your foreman
to keep for the benefit of this office time cards which I will
furnish.  These cards to be delivered to me weekly.'

"We thank you for this order and will make every
effort to serve you to the very best of our ability.
                         "Very  truly  yours,
W. C. R.-T.                    "SCHMIED-SISMAN CO."

No reply was made to this letter by defendant
Miller, and immediately plaintiff commenced furnish-
ing materials and employing workmen in remodeling
and repairing the building, furnishing labor and ma-
terials to the amount of $3,999.41, upon which pay-
ments of $2,081.50 were made, leaving a balance, as
claimed by the plaintiff, of $1,917.91, for which a
claim of lien was filed on December 13, 1916.

It is the claim of plaintiff that the work progressed
from early in July, and was finally completed on the

14th day of October, and that during this entire period detailed invoices of the charges made against the defendant Miller were from time to time mailed to him at his address. While the work progressed the plaintiff had its superintendent, foreman and employees on the job, and it appears that defendant Miller was on the job frequently, that he met the superintendent of the plaintiff, who received directions from Miller, and talked with Miller about the progress of the work; and the superintendent when on the job on one occasion asked Miller for a payment of $1,000 on account.

On November 10, 1916, George D. Hulburt issued a certificate or statement addressed to defendant Miller, containing the following language:

"I have this day given to Messrs. Schmied-Sisman Co. my certificate for one thousand and eight hundred and sixty-nine dollars and fifty-two cents ($1,869.52) this being the balance of their claim against said building, and they state that it must be paid at once in order to free your building from liens."

On November 13, 1916, the plaintiff received a letter from the attorneys of defendant Miller in which, after quoting the above language of George D. Hulburt, they say:

"There is a complete statement in the file by Mr. Hulburt showing that on September 26th there was due Schmied-Sisman Co. a balance of $1,267.37. Since that date Mr. Miller has paid the additional sum of $1,150 on your account. Since September 26th no additional work has been done, and it is very difficult to understand how there could be a balance in your favor in excess of $117.37. We are informed by Mr. Miller that he stands ready to pay the sum of $117.37, the correct balance due you."

It is a significant fact that no claim was made in this letter that George D. Hulburt was the original contractor, and plaintiff a sub-contractor, as is now claimed. When the bill was filed, defendant Miller

answered.    There was a general denial of the allega-
tions of the bill, but no claim was made that plaintiff
was a sub-contractor and George D. Hulburt the princi-
pal contractor.

The position and claims of the defendant Miller are
well stated by his counsel at the hearing, as follows:

"Our case will be—we expect to show that this work
was not done, if any work was done by the Sisman
Company.    It was not done in pursuance of any con-
tract between the Sisman Company and W. H. Miller,
or anybody authorized by him to make a contract for
him with the Sisman Company; that W. H. Miller had
a contract to do all this work with George D. Hulburt,
and that he paid George D. Hulburt, and that with
the exception of about $117 the job has been com-
pletely paid for by W. H. Miller; that this letter of
July 12th, which was written by the Sisman Com-
pany, was brought to the attention of the Sisman
Company, and it was stated by those in authority in
the Sisman Company that they did have a misunder-
standing as to what the matter was, but that about
the time the work started those in authority admitted
that they were doing the work for George D. Hulburt,
and that they expected to look to him for their pay,
and that they understood that they had no contract
of any kind with W. H. Miller."

It should be said that there was testimony in sup-
port of the claim of defendant Miller.    The claims
of defendant Miller may be stated to be that the
amount of labor and material was not properly or
adequately proved; that the plaintiff was not the prin-
cipal contractor, but was a sub-contractor; that plain-
tiff has not maintained a cause of action under the
mechanic's lien law; and all of these questions are
argued at great length.

The questions presented are mainly questions of
fact.    There was much conflicting testimony.    In fact
it is seldom that so much conflicting and irreconcil-
able testimony is found in a record.    It is a case

where the circuit judge, who heard and saw the witnesses testify, has a peculiar advantage over an appellate court. We shall not discuss the testimony in detail.

We have read and considered the record with care, and are constrained to agree with the result reached by the trial court. The opinion of the trial court is contained in the record. We quote with approval from it as follows:

"Defendant denies that there was a contract with plaintiff, denies that George D. Hulburt was his architect or agent, but alleges that the contract was made with George D. Hulburt. Defendant further alleges that there was a failure to comply with the provisions of the statute relative to mechanic's liens, inasmuch as no sworn statement was filed according to statutory requirement, and that the last of the labor performed, or material furnished was prior to October 14, 1916. The testimony regarding the making of the contract is in hopeless conflict, and cannot be reconciled. The testimony of George D. Hulburt would, if he told the truth, have been of great value, but both sides admitted that he could not be brought into court. * * * A letter written by George D. Hulburt and the answer of the Andrew C. Sisman company, constitute a valid contract when taken in connection with the fact that the repairs were started, carried on and finished with labor and material and supervision furnished by said company, with the knowledge of both W. H. Miller, defendant, and George D. Hulburt. It is at this point that the testimony given by the plaintiff, cannot be squared with that given by defendant. Plaintiff's claim is based on the fact that George D. Hulburt was acting as architect and agent for defendant W. H. Miller. Defendant Miller claims that he did not engage or employ George D. Hulburt as architect or agent in this matter, but that in the presence of Harry Hulburt, he made a contract with George D. Hulburt to repair said building for the amount of the award, viz. $3,936.52.

"There is no evidence that George D. Hulburt had ever had any experience as a contractor, or that he

possessed the necessary equipment or credit. There is no evidence to show that George D. Hulburt, at any time, considered himself a contractor, but there is evidence to show that he considered himself as an architect or agent. There is no evidence to show that the plaintiff, the Sisman Company, ever considered themselves anything, or other than the principal contractor on the job, and responsible to Miller or his agent. There is no evidence to show that the plaintiff, the Sisman Company, ever considered George D. Hulburt as acting in any other capacity than architect or agent of defendant Miller. The fact that defendant Miller spent so little time on the job would indicate either that he had great confidence in his contractor, or that he had an agent or representative on the job, or both. After the job was completed, and while the matter was in controversy, defendant Miller, by his attorney wrote a letter to the Sisman Company, in which no attempt was made to deny that the contract was entered into between Miller and the Sisman Company, and performed by the said Sisman Company. These facts, combined with the fact that it seems absurd that Harry L. Hulburt should forfeit his fee as an adjuster, and deceive the company by whom he was employed for the purpose of giving his brother George D. Hulburt a contract, at a price which promised to yield at best but a small profit are significant. A fair preponderance of all the evidence convinces the court that a contract was entered into between W. H. Miller, defendant, by George D. Hulburt, his agent, and the plaintiff, Andrew C. Sisman Company, to repair, remodel, and alter said premises, on a so-called time and material basis. Having decided the question of contract, it remains to consider whether there is evidence which proves that the provisions of the statute relating to mechanics' liens were followed. There can be no disagreement with the law as cited in brief of defendant's attorneys. The question is: 'Do the facts as proved by the evidence satisfy the court that there was a compliance with the law?' * * * Under all the evidence in this case the court finds that in regard to furnishing a sworn statement, and in regard to proof as to the

last date on which material and labor were furnished, there was a compliance with the law sufficient to maintain the lien. It follows that a decree will be signed by which the plaintiff, the Andrew C. Sisman Company, shall receive the amount of their lien with interest."

Pending the hearing the bill was dismissed as to the defendant W. H. Miller Company.

The decree below is affirmed, with costs to plaintiff.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.